# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX TABATABAEE, | 1:13-cv-00911-LJO-BAM (PC) |
| Plaintiff, | SCREENING ORDER DISMISSING FIRST AMENDED COMPLAINT AND GRANTING LEAVE TO AMEND |
| v. | (ECF No. 7) |
| BRIAN MARSHALL, et al., | |
| Defendants. | THIRTY-DAY DEADLINE |

### I. Screening Requirement and Standard

Plaintiff Alex Tabatabaee ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff initiated this action on June 17, 2013.  Plaintiff's first amended complaint, filed on June 28, 2013, is currently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is incarcerated at Kern Valley State Prison. The events alleged in the complaint occurred while Plaintiff was housed at Wasco State Prison. Plaintiff names the following defendants: Brian Marshall, L. D. Zamora, Eureka Daye, D. Bradford, Jane Does 1-3, D. Keenan, A. Johnson, V. Safari, R. Baldoz, Julie Santos, Claudette Quiling, L. Coleman, D. Klingenberg, M. Alcala, C. Grandjean Rios, John Doe #1, and J. Collins.

Plaintiff was housed at Wasco State Prison from February 2, 2012 to August 9, 2012. On June 10, 2012, after a suicide attempt, Plaintiff was removed from general population and was admitted to Wasco State Prison's Correctional Treatment Center (CTC) on suicide watch. On June 12, 2012, at 3:45 p.m., Defendant A. Johnson took Plaintiff's vital signs through the food port and then documented the vitals in Plaintiff's medical chart. Plaintiff's blood pressure was

1  91/61.  During this assessment, Defendant A. Johnson exchanged sarcastic statements with
2  Plaintiff.  Plaintiff alleges that a blood pressure measurement of 91/61 is considered
3  "hypotension" and a person with this condition requires treatment.  However, on June 12, 2012,
4  Defendant A. Johnson did not recheck Plaintiff's vital signs or provide Plaintiff with any medical
5  care for his hypotension.
6       On June 12, 2012, at 4:15 p.m., Defendant V. Safari reviewed Plaintiff's health chart and
7  administered Plaintiff's p.m. medication of Duloxetine 40 mg (Cymbalta).  Defendant V. Safari
8  did not check Plaintiff's vital signs and did not provide any medical care for Plaintiff's
9  hypotension.  Plaintiff alleges that Duloxetine is a medication that can lower blood pressure.
10      On June 12, 2012, at 8:30 p.m., Defendant Safari and Defendant Baldoz administered
11  Plaintiff's nightly medication of Buspirone (Buspar) 30 mg.  Defendants Safari and Baldoz did
12  not check Plaintiff's vital signs and did not provide him any medical care for his hypotension.
13  Plaintiff alleges that Buspirone has documented side effects of lowering blood pressure.
14      On June 13, 2012, Plaintiff's sleep was constantly disturbed due to staff noises.  Plaintiff
15  complained about the staff to Defendant Santos at 3:00 a.m.  Plaintiff again complained to
16  Defendant Santos and another nurse at 3:15 a.m.  Defendant Santos then offered to give Plaintiff
17  a medication to make him sleep better.  Plaintiff informed Defendant Santos that he would accept
18  it if he was not given a mood stabilizer medication.  At approximately 3:20 a.m., Defendant
19  Santos reviewed Plaintiff's medical chart with Defendant Quiling.  Defendant Santos entered
20  Plaintiff's room with a custody officer to administer an injection.  Plaintiff was skeptical of the
21  injection and demanded to know what the medication was.  Defendant Santos replied, "Don't
22  worry so much about it, we know what we are doing.  We are not going to give you something
23  that you don't want."  Defendant Santos then injected the medication into Plaintiff's left shoulder
24  and left Plaintiff's room with the custody officer.  Defendants Santos and Quiling did not check
25  Plaintiff's vital signs and did not provide medical care for Plaintiff's hypotension.  Defendant
26  Santos and another nurse manipulated Plaintiff's medical chart to justify their actions.  At 3:40
27  a.m., Plaintiff was overwhelmed with drowsiness and fell asleep.  The injected medication was
28  later discovered to be Ziprasidone Mesylate (Geodon), which was prescribed by Dr. Hemela as

1  PRN.  Plaintiff alleges that Geodon is a mood stabilizer medication that can lower blood
2  pressure.
3      On June 13, 2012, at 6:40 a.m., Defendant Klingenberg documented in Plaintiff's chart
4  that no physical distress was noted despite being informed by Plaintiff that he was feeling
5  slightly light headed with stiffness of his muscles.
6      On June 13, 2012, at 7:00 a.m., C.N.A. Mason took Plaintiff's vital signs through the
7  food port and documented them in Plaintiff's medical chart.  Plaintiff's blood pressure was
8  90/62.  At 8:10 a.m., Defendant John Doe #1, a custody officer, approached Plaintiff's door and
9  demanded that Plaintiff get up from his mattress on the floor and come to the door to have his
10 blood pressure taken by the C.N.A.  Plaintiff informed Defendant John Doe #1 that he was not
11 feeling well and was lightheaded and too weak to get up from his mattress.  Defendant John Doe
12 #1 then stated, "Cut your bullshit acting!  If you don't come to this room's door, I am going to
13 fucking pepper spray you then make you fucking get up."  Plaintiff slowly got off his mattress
14 and walked to the door.  At 8:15 a.m., as Plaintiff was having his vital signs checked through the
15 food port, Plaintiff lost consciousness and fell to the floor.  As a result of the fall, Plaintiff
16 injured his right knee and the back of his head.  Plaintiff was transported to the TTA to receive
17 urgent care.  Plaintiff was treated by Dr. Soleimani and received a few sutures on the back of his
18 head to close his wound.
19      On June 13, 2012, Dr. Soleimani generated a medical assessment report.  According to
20 the findings, Plaintiff was suffering from hypotension with blood pressure of 84/50 and
21 bradycardia with a low pulse rate of 48.  It was deemed that Plaintiff's fall was most probably
22 due to a drop in blood pressure as a result of Plaintiff's hypotension.  Plaintiff's sutures were to
23 be removed in no more than 10 days.
24      On June 13, 2012, at 10:00 a.m., Plaintiff returned to his CTC room for suicide watch.
25 At this time, Defendant Acala administered an IV tube to Plaintiff's left arm through the food
26 port.  Plaintiff was administered IV fluids for 1 hour while lying on the floor inside his cell.
27 Plaintiff alleges that this caused him great discomfort and pain to his left arm and head.
28

Within 5 days of Plaintiff's placement at CTC, he was infected with Scabies because of poor room sanitation and linen conditions.

On June 23, 2012, at 2:00 p.m., Plaintiff was scheduled for discharge from CTC. His assigned discharge nurse was Defendant Grandjean Rios. Plaintiff was discharged without any of his medications, orders, follow-up medical care orders and without having his sutures removed. As a result, Plaintiff was left for two weeks without any of his needed medications for his medical conditions (Barrett's Esophagus with G.E.R.D. and gastritis) until July 9, 2012. During this time, Plaintiff suffered from nausea, vomiting, stomach bloating, pain and extreme G.E.R.D. symptoms. Plaintiff's sutures were removed from the back of his head about two weeks past the 10-day removal order. This caused gross scarring at the site of his injury.

Due to Plaintiff's right knee injury, he was diagnosed with an internal radial tear of the medial meniscus with joint effusion. This affected Plaintiff's daily physical activities and impaired his mobility. He was subjected to daily pain and lost sensation to the left inner side of his right knee. Plaintiff underwent knee surgery about nine months after June 13, 2012. Plaintiff still experiences right knee pain.

On June 27, 2012, Plaintiff submitted a health care staff complaint, which was assigned and investigated by B. Marshall, D. Bradford and C. Olayvar. On August 2, 2012, B. Marshall generated a fraudulent review response to cover up the true findings of the investigation. On November 26, 2012, Plaintiff exhausted his administrative remedies. L. D. Zamora generated a third level response with findings that medical staff had violated policy related to administration of medications as ordered, taking vital signs through the food port, gossiping in the hallways and ensuring that Plaintiff's discharge medications were ordered.

On July 12, 2012, Plaintiff submitted another staff complaint to address the issues related to his injuries. On October 25, 2012, upon completion of the investigation, D. Kennan, J. Collins and R. Wortham generated a fraudulent review response with intentional false statement to conceal the true findings. On January 3, 2012, Plaintiff exhausted his administrative remedies.

Upon pursuing the two health care staff complaints, Plaintiff was subjected to 2 retaliatory transfer attempts and an actual retaliatory transfer to California State Prison-

1   Sacramento on August 9, 2012.  Upon housing at California State Prison-Sacramento, Plaintiff
2   submitted administrative grievances to Wasco State Prison related to his retaliatory transfer.
3   However, appeals coordinators J. Ortega and R. Escalante fraudulently screened out his
4   grievances to prevent Plaintiff from bringing attention to the retaliatory actions.

5   On August 18, 2012, while at California State Prison-Sacramento, Plaintiff initiated a
6   new health care staff complaint.  However, the staff complaint was fraudulently changed to a
7   regular health care appeal by Eureka Daye in collaboration with Wasco State Prison's Brian
8   Marshall to prevent its legitimate investigation.  On October 17, 2012, B. Marshall and J. Collins
9   generated a review response to Plaintiff's health care appeal with many fraudulent claims and
10  misleading statements.   On April 9, 2013, Plaintiff exhausted his administrative remedies.
11  However, the third level response contained misleading statements and fraudulent claims.

12  On December 6, 2012, Plaintiff submitted a health care staff complaint against B.
13  Marshall, J. Collins, C.N.E. Bradford, D. Keenan, R. Wortham, L. Zamora and Eureka Day for
14  conspiracy, fraud and violating Plaintiff's Fourteenth Amendment rights.  On December 27,
15  2012, Plaintiff submitted a duplicated staff complaint.  Prison officials refused to address the
16  complaint by not processing it.  On April 22, 2013, Plaintiff submitted a staff complaint with the
17  same claims to the office of the third level health care appeals, but obtained the same results.

18  On December 6, 2012, Plaintiff filed with the Victim Compensation and Government
19  Claims Board for damages.  On January 17, 2013, the Board rejected Plaintiff's claim.

20  Plaintiff brings the following claims:  (1) deliberate indifference to serious medical need
21  in violation of the Eighth Amendment against Defendants A. Johnson, V. Safari, R. Baldoz, J.
22  Santos, C. Quiling, M. Acala and D. Klingenberg for treatment related to Plaintiff's hypotension
23  condition; (2) deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment
24  against Defendant John Doe #1; (3) failure to properly train and supervise staff in violation of the
25  Eighth Amendment against B. Marshall, D. Bradford, Jane Does 1-3, and R. Richey; (4)
26  deliberate indifference to serious medical needs in violation of the Eighth Amendment against C.
27  Grandjean Rios related to Plaintiff's discharge care; (5) conspiracy in violation of the Eighth
28

Amendment against Brian Marshall, Eureka Daye, D. Bradford, D. Keenan, L. D. Zamora, and J. Collins; and (6) state law claims.

Plaintiff seeks declaratory relief, along with compensatory and punitive damages.

**III.    Discussion**

**A.  First Claim for Relief:  Deliberate Indifference to Serious Medical Needs**

In his first claim for relief, Plaintiff alleges that Defendants A. Johnson, V. Safari, R. Baldoz, J. Santos, C. Quiling, M. Acala and D. Klingenberg were deliberately indifferent to Plaintiff's hypotension condition in violation of the Eighth Amendment to the United States Constitution.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' "and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010). "Deliberate indifference is a high legal standard." Id. at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir.1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990).

///

<u>Johnson, Safari, Baldoz, Santos, Quiling and Klingenberg</u>

Plaintiff admits that Defendants Johnson, Safari, Baldoz, Santos, Quiling and Klingenberg provided him with medical treatment and care.  In particular, Plaintiff admits that Defendant A. Johnson took Plaintiff's vitals, Defendants V. Safari and Baldoz administered needed medications for certain of Plaintiff's medical issues, Defendants Santos and Quiling responded to Plaintiff's request for medications to help him sleep and Defendant Klingenberg monitored Plaintiff for signs of physical distress.  Plaintiff's allegations that these defendants failed to treat his hypotension amount to medical malpractice or, at most, gross negligence, which is not sufficient to state a cognizable Eighth Amendment claim.  Plaintiff will be given leave to cure this deficiency to the extent he is able to do so in good faith.

<u>Acala</u>

Plaintiff alleges that Defendant Acala administered IV fluids after Plaintiff received urgent care from Dr. Soleimani.  This is not sufficient to state a claim for deliberate indifference to serious medical needs related to Plaintiff's hypotension.  Rather, it is an admission that Defendant Acala provided Plaintiff with medical treatment.  Additionally, and as discussed more fully below, to the extent Plaintiff seeks to impose liability against Defendant Acala based on supervisory liability, he may not do so.

**B.  Second Claim for Relief:  Deliberate Indifference**

In his second claim for relief, Plaintiff alleges that Defendant John Doe #1 was deliberately indifferent to Plaintiff's health and safety in violation of the Eighth Amendment to the United States Constitution.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane conditions of confinement. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials therefore have a "duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir.2000) (citations omitted).

In order to establish a violation of this duty, a prisoner must show that he was subjected to an objectively serious deprivation that amounts to a denial of "the minimal civilized measure

8

of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). A prisoner must also show that prison officials acted with sufficiently culpable states of mind in failing to satisfy their duties. Farmer, 511 U.S. at 834. Prison officials must have acted with deliberate indifference. Id.  A prison official is liable under the Eighth Amendment only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

In this case, Plaintiff alleges that Defendant John Doe #1 ordered Plaintiff to get up from his mattress on the floor and come to the door to have his blood pressure taken by the C.N.A. Although Plaintiff indicated that he was not feeling well, was lightheaded and was too weak to get up from his mattress, Defendant John Doe #1 threatened Plaintiff with pepper spray if he failed to get up and come to the door.  After Plaintiff came to the door, and while his vitals were being taken, Plaintiff lost consciousness and fell to the floor.

Plaintiff has failed to allege facts demonstrating that Defendant John Doe #1 knew of and disregarded an excessive risk to Plaintiff's health or safety.  Plaintiff has not alleged sufficient facts to demonstrate that Defendant John Doe #1 knew that Plaintiff had hypotension or that he was at risk of losing consciousness and falling.  Plaintiff also has not alleged facts sufficient to demonstrate that Defendant John Doe #1 drew any inference that Plaintiff was at substantial risk of harm from a fall based solely on Plaintiff's complaints of lightheadedness and weakness. Plaintiff will be given leave to cure these deficiencies.

**C.  Third Claim for Relief:  Failure to Train/Supervise**

In his third claim for relief, Plaintiff alleges that Defendant B. Marshall, D. Bradford, Jane Does 1-3 and R. Richey failed to provide adequate training and supervision of CTC nursing and custody staff.  Plaintiff may not bring suit against these defendants (or any others) based solely on their roles as supervisors.

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior or vicarious liability. Crowley v. Bannister,

734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc).  "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  Crowley, 734 F.3d at 977 (citing Snow v. McDaniel, 681 F.3d 978, 989) (9th Cir. 2012) (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074-75; Lacey, 693 F.3d at 915-16.  "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation."  Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff has not alleged that Defendants B. Marshall, D. Bradford, Jane Does 1-2 and R. Richey were personally involved the constitutional deprivation related to Plaintiff's hypotension or that they instituted a deficient policy.  Plaintiff will be given leave to cure this deficiency.

### D. Fourth Claim for Relief:  Deliberate Indifference to Serious Medical Needs

In his fourth claim for relief, Plaintiff alleges that Defendant C. Grandjean Rios was deliberately indifferent to Plaintiff's post-discharge medical needs in violation of the Eighth Amendment to the United States Constitution.  As discussed above, to state a claim based on prison medical treatment, an inmate "must show 'deliberate indifference to serious medical needs.'"  Jett, 439 F.3d at 1096.  Here, Plaintiff has failed to allege facts sufficient for the Court to determine whether he has stated a cognizable claim against Defendant Grandjean Rios.  Plaintiff has asserted vague allegations against Defendant Grandjean Rios and has provided no factual allegations regarding persons responsible for discharge or for receiving after Plaintiff was released back to the general population.

### E. Fifth Claim for Relief:  Conspiracy

In his fifth claim for relief, Plaintiff alleges that defendants Marshall, Daye, Bradford, Keenan, Zamora and Collins engaged in a conspiracy to violate his Eighth Amendment rights.

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir.2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir.1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir.2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir.1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

Plaintiff has failed to allege any plausible facts supporting the existence of a conspiracy between defendants. Plaintiff's conclusory allegations are not sufficient. Further, Plaintiff's allegations related to the processing of his inmate appeals also do not support a conspiracy claim. The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993).

**F. Declaratory Relief**

Plaintiff seeks a declaration that his rights were violated. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir.1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, the verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that a defendant violated Plaintiff's rights is unnecessary.

///
///
///

### G. State Law Claims

As Plaintiff has failed to state any cognizable federal claims in this action, the Court finds it unnecessary to screen Plaintiff's state law claims. Plaintiff may renew his state law claims in any amended complaint.

### IV. Conclusion and Order

Plaintiff's amended complaint fails to state a cognizable claim. As noted above, the Court will provide Plaintiff with the opportunity to file an amended complaint to cure the identified deficiencies. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey, 693 F.3d at 927. Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's complaint is dismissed for failure to state a cognizable claim;
3. Within thirty (30) days from the date of service of this order, Plaintiff shall file a second amended complaint; and

///
///
///
///

4.     <u>If Plaintiff fails to file a second amended complaint in compliance with this order, this action will be dismissed for failure to obey a court order.</u>

IT IS SO ORDERED.

Dated:   **November 17, 2014**                    /s/ *Barbara A. McAuliffe*
                                                              UNITED STATES MAGISTRATE JUDGE