# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX TABATABAEE,<br><br>   Plaintiff,<br><br>   v.<br><br>BRIAN MARSHALL, et al.,<br><br>   Defendants. | 1:13-cv-00911-LJO-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 16)<br><br>FOURTEEN-DAY DEADLINE |

**Findings and Recommendations**

**I.    Screening Requirement and Standard**

Plaintiff Alex Tabatabaee ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated this action on June 17, 2013. On November 18, 2014, the Court dismissed Plaintiff's first amended complaint with leave to amend. Plaintiff's second amended complaint, filed on December 29, 2014, is currently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

1

relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.      Plaintiff's Allegations**

Plaintiff is incarcerated at Kern Valley State Prison.  The events alleged in the complaint occurred while Plaintiff was housed at Wasco State Prison.  Plaintiff names the following defendants:  (1) Brian Marshall; (2) D. Bradford; (3) M. Medina; (4) R. Ritchie; (5) Jane Does 1-3; (6) A. Johnson; (7) V. Safari; (8) R. Baldoz; (9) Julie Santos; (10) Claudette Quiling; (11) L. Coleman; (12) C. Grandjean Rios; and (13) John Doe #1.

Plaintiff was housed at Wasco State Prison from February 2 to August 9, 2012.  Wasco State Prison has a correctional treatment center (CTC) that houses inmate-patients that are in need of professional supervised health care services and treatment.

On June 10, 2012, Plaintiff was removed from general population after a suicide attempt and was admitted to the CTC on suicide watch. Plaintiff remained in the CTC from June 11 to June 23, 2012.

On June 11, 2012, about 1:45 a.m., Plaintiff was assigned to the CTC and placed on suicide watch with 1-on-1 direct observation.

On June 12, 2012, at about 3:45 p.m., Defendant A. Johnson, CNA, took Plaintiff's vital signs through the food port and then documented the vitals in Plaintiff's medical chart. Defendant acknowledged that Plaintiff was suffering from hypotension as his blood pressure was 91/61. During this assessment, Defendant A. Johnson exchanged sarcastic statements with Plaintiff. Defendant A. Johnson stated, "You've got low blood pressure, but it should be of no concern to you especially if you die from it, it'll work out in your favor anyway since you claimed to be suicidal." Plaintiff alleges that a blood pressure measurement of 91/61 is considered "hypotension" and a person with this condition requires treatment. However, on June 12, 2012, Defendant A. Johnson refused to provide Plaintiff with any medical care for his hypotension. She also failed to monitor Plaintiff's blood pressure and vital signs during her shift.

On June 12, 2012, at 4:15 p.m., Defendant V. Safari reviewed Plaintiff's health chart and administered Plaintiff's p.m. medication of Cymbalta. Defendant V. Safari did not check Plaintiff's vital signs and did not provide any medical care for Plaintiff's hypotension. Defendant V. Safari claimed she did not have time to monitor his blood pressure. Plaintiff alleges that Cymbalta may have unfavorable blood pressure side effects.

On June 12, 2012, at 8:30 p.m., Defendant Safari and Defendant Baldoz administered Plaintiff's nightly medication of Buspirone (Buspar) 30 mg. Defendants Safari and Baldoz did provide Plaintiff any medical care for his hypotension despite knowledge that the medication may cause further unfavorable blood pressure side effects.

On June 13, 2012, from 12:00 a.m. to 3:00 a.m., Plaintiff was having difficulty with sleep because of CTC's nursing and custody staff. Plaintiff alleges that they were loud, slamming doors, laughing and dragging things across the floor. At about 3:00 a.m., Plaintiff complained

about the staff to Defendant Santos.  At about 3:15 a.m., Plaintiff again complained to Defendant Santos and another nurse at 3:15 a.m.  Defendant Santos then offered to give Plaintiff a psych medication to make him sleep better.  Plaintiff informed Defendant Santos that he would accept the medication if he was not given a mood stabilizer because he does not like the side effects of those types of medications.

At approximately 3:20 a.m., Defendant Santos reviewed Plaintiff's medical chart with Defendant Quiling.  Defendant Santos entered Plaintiff's room with a custody officer to administer an injection.  Plaintiff was skeptical of the injection and demanded to know what the medication was.  Defendant Santos replied, "Don't worry so much about it, we know what we are doing.  We are not going to give you something that you don't want."  Defendant Santos then injected the medication into Plaintiff's left shoulder and left Plaintiff's room with the custody officer.  Defendants Santos and Quiling failed to monitor Plaintiff's untreated hypotension.  At 3:40 a.m., Plaintiff was overwhelmed with drowsiness and fell asleep.  The injected medication was later discovered to be Ziprasidone Mesylate (Geodon), which was prescribed by Dr. Hemela as PRN.  Plaintiff alleges that Geodon is a mood stabilizer medication that can lower blood pressure.  Plaintiff alleges that after the injection of Geodon, Defendant Santos and another nurse documented fraudulent notes in Plaintiff's health records to justify the injection.

On June 13, 2012, at 6:40 a.m., Defendant Klingenberg falsely documented in Plaintiff's chart that no physical distress was noted despite being informed by Plaintiff that he was feeling slightly light headed with stiffness of his muscles.

On June 13, 2012, at 7:00 a.m., C.N.A. Mason took Plaintiff's vital signs through the food port and documented them in Plaintiff's medical chart.  Plaintiff's blood pressure was 90/62.  At 8:10 a.m., CTC's nursing staff informed the clinical custody officer, Defendant John Doe #1, that Plaintiff was suffering from low blood pressure and they needed his assistance while they checked Plaintiff's blood pressure through the food port.  Defendant John Doe #1 approached Plaintiff's door and demanded that Plaintiff get up from his mattress on the floor and come to the door to have his blood pressure taken by the C.N.A.  Plaintiff informed Defendant John Doe #1 and C.N.A. Coleman that he was feeling dizzy, lightheaded, and too weak to stand

4

and that if he got up from his mattress, he may fall.  Defendant John Doe #1 then stated, "Cut your bullshit acting!  If you don't come to this room's door, I am going to fucking pepper spray you then make you fucking get up."  Plaintiff slowly got off his mattress and walked to the door.  As Plaintiff was having his blood pressure taken by C.N.A. Coleman through the food port, Plaintiff lost consciousness and fell to the floor.  As a result of the fall, Plaintiff injured his right knee and the back of his head.  Plaintiff was transported to the TTA to receive urgent care.  Plaintiff was treated by Dr. Soleimani and received a few sutures on the back of his head to close his wound.

     On June 13, 2012, Dr. Soleimani generated a medical assessment report.  According to the findings, Plaintiff was suffering from hypotension with blood pressure of 84/50 and bradycardia with a low pulse rate of 48.  It was deemed that Plaintiff's fall was most likely due to a drop in blood pressure as a result of Plaintiff's hypotension.  Plaintiff was to be administered saline IV fluids and his pysch meds were suspended until his vital signs and blood pressure were stabilized.  Per the physician's order, Plaintiff's sutures were to be removed in no more than 10 days.

     On June 13, 2012, at 10:00 a.m., Plaintiff returned to his CTC room for suicide watch.  At this time, Defendant Acala administered an IV tube to Plaintiff's left arm through the food port.  Plaintiff was administered IV fluids for 1 hour while lying on the floor inside his cell.  Plaintiff alleges that this caused him great discomfort and pain to his left arm and head.

     Within 5 days of Plaintiff's placement at CTC, he was infected with Scabies because of poor room sanitation and linen conditions.

     On June 23, 2012, at 9:30 a.m., Plaintiff's mental health treatment team ordered Plaintiff to be discharged from CTC and informed Defendant Rios of Plaintiff's discharge order.  Defendant Rios was the discharge nurse responsible for fulfilling physicians' orders, preparing prescribed medications before return to general population and arranging follow-up care.  Plaintiff alleges that Defendant Rios discharged Plaintiff without any of his medications or removal of his sutures.  As a result, Plaintiff was left for two weeks without any of his needed medications for his medical conditions (Barrett's Esophagus with G.E.R.D. and gastritis).

1  During this time, Plaintiff suffered from nausea, stomach bloating, cramps and increased
2  G.E.R.D. symptoms.  Plaintiff's sutures were removed from the back of his head about two
3  weeks past the 10-day removal order.  This caused gross scarring at the site of his injury.
4       Due to Plaintiff's right knee injury, he was diagnosed with an internal radial tear of the
5  medial meniscus with joint effusion, which required surgery.  This affected Plaintiff's daily
6  physical activities and impaired his mobility.  He was subjected to daily pain and lost sensation
7  to the left inner side of his right knee.  Plaintiff underwent knee surgery about nine months after
8  June 13, 2012.  Plaintiff still experiences right knee pain.
9       On December 6, 2012, Plaintiff submitted a claim to the California Government Claims
10 Board.  On January 17, 2013, the Board rejected Plaintiff's claim.
11      Plaintiff brings the following claims:  (1) deliberate indifference to serious medical needs
12 in violation of the Eighth Amendment against Defendants A. Johnson, V. Safari, R. Baldoz, J.
13 Santos, and C. Quiling for treatment related to Plaintiff's hypotension condition; (2) deliberate
14 indifference to Plaintiff's safety in violation of the Eighth Amendment against Defendant John
15 Doe #1; (3) failure to properly train and supervise staff in violation of the Eighth Amendment
16 against B. Marshall, D. Bradford, Jane Does 1-3, and R. Richey; (4) deliberate indifference to
17 serious medical needs in violation of the Eighth Amendment against C. Grandjean Rios related
18 to Plaintiff's discharge care; (5) deliberate indifference to Plaintiff's serious medical needs
19 against Defendant L. Coleman; and (6) state law claims for intentional infliction of emotional
20 distress and medical malpractice.
21      Plaintiff seeks compensatory and punitive damages.
22 **III.     Discussion**
23 **A.  First Claim for Relief:  Deliberate Indifference to Serious Medical Needs**
24      In his first claim for relief, Plaintiff alleges that Defendants A. Johnson, V. Safari, R.
25 Baldoz, J. Santos, and C. Quiling were deliberately indifferent to Plaintiff's hypotension
26 condition in violation of the Eighth Amendment to the United States Constitution.
27      "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an
28 inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d

1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' " "and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010). "Deliberate indifference is a high legal standard." Id. at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir.1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990).

Plaintiff admits that Defendants Johnson, Safari, Baldoz, Santos, and Quiling provided him with medical treatment and care. In particular, Plaintiff admits that Defendant A. Johnson took Plaintiff's vitals, Defendants V. Safari and Baldoz administered needed medications for certain of Plaintiff's medical issues, and Defendants Santos and Quiling responded to Plaintiff's request for medications to help him sleep. Plaintiff's allegations that these defendants failed to treat his hypotension amount to medical malpractice or, at most, gross negligence, which is not sufficient to state a cognizable Eighth Amendment claim.

**B.  Second Claim for Relief:  Deliberate Indifference**

In his second claim for relief, Plaintiff alleges that Defendant John Doe #1 was deliberately indifferent to Plaintiff's health and safety in violation of the Eighth Amendment to the United States Constitution.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials therefore have a "duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted).

In order to establish a violation of this duty, a prisoner must show that he was subjected to an objectively serious deprivation that amounts to a denial of "the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). A prisoner must also show that prison officials acted with sufficiently culpable states of mind in failing to satisfy their duties. Farmer, 511 U.S. at 834. Prison officials must have acted with deliberate indifference. Id. A prison official is liable under the Eighth Amendment only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

In this case, Plaintiff alleges that Defendant John Doe #1 ordered Plaintiff to get up from his mattress on the floor and come to the door to have his blood pressure taken by the C.N.A. Although Plaintiff indicated that he was not feeling well, was lightheaded and was too weak to get up from his mattress, Defendant John Doe #1 threatened Plaintiff with pepper spray if he failed to get up and come to the door. After Plaintiff came to the door, and while his vitals were being taken, Plaintiff lost consciousness and fell to the floor.

Plaintiff has failed to allege facts demonstrating that Defendant John Doe #1 knew of and disregarded an excessive risk to Plaintiff's health or safety from losing consciousness and falling. Plaintiff also has failed to allege facts sufficient to demonstrate that Defendant John Doe #1 drew any inference that Plaintiff was at substantial risk of harm from a fall based solely on Plaintiff's complaints. Defendant John Doe #1 was reportedly acting in compliance with the nursing staff request that he provide assistance while a nurse checked Plaintiff's blood pressure through the

food port.  (ECF No. 16, p. 9.)  In other words, Defendant John Doe #1 relied on the opinion or statements of the nursing staff.

### C. Third Claim for Relief:  Failure to Train/Supervise

In his third claim for relief, Plaintiff alleges that Defendant B. Marshall, D. Bradford, Jane Does 1-3 and R. Ritchie failed to provide adequate training and supervision of CTC nursing and custody staff.  Plaintiff also elsewhere alleges that Defendant Medina failed to provide adequate training and supervision.  However, Plaintiff may not bring suit against these defendants (or any others) based solely on their roles as supervisors.

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior or vicarious liability.  Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc).  "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  Crowley, 734 F.3d at 977 (citing Snow v. McDaniel, 681 F.3d 978, 989) (9th Cir. 2012) (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074-75; Lacey, 693 F.3d at 915-16.  "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation."  Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff has not alleged that Defendants B. Marshall, D. Bradford, Jane Does 1-2 and R. Richey were personally involved the constitutional deprivation related to Plaintiff's hypotension or that they instituted a deficient policy.  Plaintiff's conclusory allegations regarding deficient policies are not sufficient as he has not identified any relevant policy.

### D. Fourth Claim for Relief:  Deliberate Indifference to Serious Medical Needs

In his fourth claim for relief, Plaintiff alleges that Defendant C. Grandjean Rios was deliberately indifferent to Plaintiff's post-discharge medical needs in violation of the Eighth

Amendment to the United States Constitution.  As discussed above, to state a claim based on prison medical treatment, an inmate "must show 'deliberate indifference to serious medical needs.'" Jett, 439 F.3d at 1096.

Plaintiff has not stated a cognizable claim for relief against Defendant Rios.  There is no indication that Defendant Rios was responsible for or had control over the actions of custody or medical staff following Plaintiff's return to the general population.  Stated differently, there is no indication that Defendant Rios controlled the administration of Plaintiff's medication or the responsiveness to his health care needs (such as ensuring removal of the sutures) after Plaintiff's release from the CTC.

### E.  Fifth Claim for Relief:  Deliberate Indifference to Serious Medical Needs

In his fifth claim for relief, Plaintiff alleges that Defendant Coleman was deliberately indifferent by taking Plaintiff's blood pressure through the food port.  In order to state a claim based on prison medical treatment, an inmate "must show 'deliberate indifference to serious medical needs.'" Jett, 439 F.3d at 1096.

Plaintiff has not stated a cognizable claim for deliberate indifference to serious medical needs against Defendant Coleman.  At best, Plaintiff has alleged gross negligence, which is insufficient to establish deliberate indifference to serious medical needs.  See Wood, 900 F.2d at 1334.

### F.  State Law Claims

As Plaintiff has failed to state any cognizable federal claims in this action, the Court finds it unnecessary to screen Plaintiff's state law claims.  The Court generally declines to exercise supplemental jurisdiction over state law claims in the absence of viable federal claims and this case presents no exception. 28 U.S.C. § 1367(c)(3); Parra v. PacifiCare of Ariz., Inc., 715 F.3d 1146, 1156 (9th Cir. 2013); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001); see also Watison v. Carter, 668 F.3d 1108, 1117 (9th Cir. 2012) (if court declines to exercise supplemental jurisdiction over state law claims once court dismissed federal claims, then the court should dismiss the state law claims without prejudice).  Therefore, it shall

be recommended that Plaintiff's state law claims be dismissed without prejudice. 28 U.S.C. § 1367(c)(3); Parra, 715 F.3d at 1156.

### IV. Conclusion and Recommendation

Plaintiff's complaint fails to state a cognizable section 1983 claim upon which relief may be granted. Although Plaintiff was provided with the relevant legal standards applicable to his federal claims, he has been unable to cure the deficiencies by amendment. Therefore, further leave to amend is not warranted. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000). Additionally, Plaintiff's state law claims should be dismissed, without prejudice, for lack of jurisdiction. 28 U.S.C. § 1367(c)(3).

Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiff's state law claims be dismissed, without prejudice, for lack of jurisdiction; and
2. This action be dismissed as to Plaintiff's federal claims, with prejudice, for failure to state a cognizable claim under section 1983.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 10, 2015**     /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE